STATE OF VERMONT
ENVIRONMENTAL COURT

}
In re Mastelli Construction Application  }  Docket No. 220-10-07 Vtec
}  (municipal zoning appeal)
}

## Decision on Multiple Pending Motions

Appellant Richard Mastelli has appealed a decision of the Town of East Montpelier Zoning Board of Adjustment ("ZBA"), upholding the Town Zoning Administrator's denial of Mastelli's application for authority to build a single-family dwelling on his property on Horn of the Moon Road in East Montpelier. Although previously represented by David L. Grayck, Esq., at the commencement of this appeal, Richard Mastelli ("Applicant") is currently representing himself. Bruce Bjornlund, Esq., represents Appellee Town of East Montpelier ("Town").

Now pending before the Court are three motions: the Town's motion to dismiss, Applicant's motion for summary judgment, and Applicant's motion for disqualification of the Town's attorney. The Town has moved to dismiss the pending appeal in its entirety, which this Court converted into a motion for summary judgment.[1] Applicant has moved for summary judgment on Questions 2 and 3 of his Statement of Questions. These two motions require us to review all of the issues raised in Applicant's Statement of Questions. Applicant has also moved to disqualify Mr. Bjornlund as the Town's attorney because Applicant asserts that Mr. Bjornlund is a necessary witness in these proceedings.

## Factual Background

To put the pending motions in context, we recite the following facts, but we do so only for purposes of the pending motions. We are not yet at the stage of making specific factual findings, and our recitation here does not constitute factual findings. See Blake v. Nationwide Ins. Co., 2006 VT 48, ¶ 21, 180 Vt. 14 (citing Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) (mem.)). The following facts are undisputed unless otherwise noted:

1. Applicant acquired title to 12.2± acres on Horn of the Moon Road in East Montpelier on September 19, 1990. The Warranty Deed by which Applicant acquired this property, a copy of which Applicant filed as Exhibit 3 to his summary judgment motion, describes the 12.2± acres in

---

[1] See Entry Order of July 31, 2008.

two separate parcel descriptions, labeled "Parcel A" and "Parcel B." Horn of the Moon Road separates the two parcels, with Parcel A (about 11.0 acres) located on the eastern side of the Road and Parcel B (about 1.2 acres) located on the western side of the Road.

2. Parcel A has already been developed with a single-family dwelling, which Applicant occupies as his principal residence. By the pending application, Applicant seeks a municipal permit to improve Parcel B with a separate single-family dwelling.

3. Applicant's 12.2-acre parcel is depicted on a site map entitled "Plat Showing Lands Of Thomas & Sharon Walker, East Montpelier, Vermont," a copy of which Applicant attached to his summary judgment motion as Exhibit 1.

4. The 12.2-acre parcel Applicant acquired in 1990 was previously part of a larger parcel of roughly 50 acres that Mr. and Mrs. Walker acquired in 1985. The Walkers subdivided this property into two lots in 1989 and thereafter conveyed what is now Applicant's 12.2-acre parcel to a predecessor in title. The parties have not yet provided the Court with a copy of the Walkers' subdivision application or permit.

5. On January 12, 1996, the Walkers sold their remaining parcel, containing about 37.8 acres, to Christopher S. Grimard.[2] This conveyance included 3.8± acres located to the west of Horn of the Moon Road and adjacent to Applicant's 1.2± acres on that side of the Road.

6. The Town adopted Zoning Regulations ("Regulations") in 1982. Neither party has suggested that the Regulations have been amended in a manner that would materially affect our analysis of the pending motions.[3]

7. Both Applicant's and Mr. Grimard's parcels are located in the Agricultural and Forest Conservation Zoning District, as designated by the Regulations, which refer to this District as "Zone E." See Regulations art. IV, § 5.

8. The Regulations require a minimum lot area of seven acres for each parcel located in Zone E.

---

[2] The Walkers' conveyance was to Mr. Grimard and a co-grantee, O'Connor, who on September 23, 2005, quitclaimed any interest in the property to Mr. Grimard.

[3] The parties have not yet provided the Court with a copy of the Regulations. The Court obtained a copy of the Regulations that were filed in another municipal appeal proceeding (In re Duhamel Zoning Permit, Docket No. 211-9-06 Vtec). The Regulations copied and relied upon here note that they were first adopted on September 14, 1982, and last amended February 25, 2002. The Court requests that the parties here provide the Court with a certified copy of the applicable Regulations for use at trial.

9.    The Regulations also require properties in Zone E to have a minimum road frontage of 350 feet and minimum front, side, and rear setbacks of 75 feet.

10.    In 2006, Mr. Grimard's attorney contacted the Town Zoning Administrator, Ross Haverstick, seeking confirmation that Mr. Grimard did not need to obtain a subdivision permit before selling the 3.8-acre portion of his property that was to the west of Horn of the Moon Road. The theory Mr. Grimard's attorney advanced to the Zoning Administrator was that the Road created a natural subdivision of Mr. Grimard's property. The Zoning Administrator then consulted with the Town's attorney, Mr. Bjornlund, concerning Mr. Grimard's specific request and the general question of whether a road creates a subdivision. Haverstick Aff. ¶ 6. Attorney Bjornlund offered the opinion to the Zoning Administrator that state and town highways can have the effect of creating a natural subdivision of property.

11.    The Zoning Administrator thereafter issued a determination, via his letter dated July 26, 2006, that Mr. Grimard would not need a subdivision permit to convey his 3.8± acres on the west side of the Road, since the Zoning Administrator had determined that it was already a separate "legal lot." Applicant supplied a copy of this letter as Exhibit 4 to his summary judgment motion.

12.    Sometime in October 2006, Mr. Grimard sold the 3.8-acre portion of his property to Damian Taylor, as a separate lot. What are now referred to as the Mastelli, Grimard, and Taylor properties are depicted on a map entitled "Character of the Neighborhood," a copy of which Applicant has provided to the Court as Exhibit 6.

13.    Mr. Taylor then applied in June 2007 for a permit to build a single-family dwelling on his 3.8-acre parcel. The then Zoning Administrator approved his application and issued Mr. Taylor a building permit.

14.    On July 2, 2007, Applicant submitted Application #07-065 ("Mastelli application") for a zoning permit to construct a 24' by 30' single-family dwelling on the 1.2-acre portion of his property to the west of Horn of the Moon Road. Applicant's Ex. 8. The Mastelli application reflects that the property he wishes to develop has road frontage of 324.64 feet and contains 1.2 acres. Id.

15.    The Zoning Administrator (Mr. Johnson, the successor to Mr. Haverstick) denied the Mastelli application on July 9, 2007, reasoning that nothing in the Regulations or any other applicable laws provided a legal foundation for regarding Applicant's 1.2± acres on the west side

of the Road as a separate lot. Applicant's Ex. 8. Applicant then appealed the Zoning Administrator's decision to the ZBA. Id.

16. On August 7, 2007, the ZBA held a hearing on the Mastelli application.

17. On August 28, 2007, the ZBA upheld the Zoning Administrator's denial of the Mastelli application, and the ZBA notified Applicant of this decision by a letter dated September 20, 2007, which appears to have been forwarded to Applicant on October 4, 2008. Applicant's Ex. 18. According to the ZBA, "the 1.2 acre portion of [Applicant's] lot located on the west side of the Horn of The Moon [R]oad is not a separate lot but part and parcel of [his] 12.2 acres." Id. Applicant thereafter appealed the ZBA decision to this Court.

## Discussion

We first note that Applicant requested in his most recent court filing (received August 8, 2008) that the Court first consider his motion to disqualify Attorney Bjornlund before considering the other pending motions. Applicant's request is appropriate from the perspective that we should first make a determination on whether Attorney Bjornlund may continue to serve as the Town's attorney before this matter proceeds further. However, as we note below, Applicant's motion to disqualify Attorney Bjornlund requires us to determine whether his testimony is necessary for a full and fair adjudication of this land use dispute. We therefore first turn our attention to the pending summary judgment motions to give context to what evidence is relevant and necessary to the issues preserved for our review in this appeal.

### Summary Judgment Standard

We may grant summary judgment only when "the pleadings, depositions, [and] answers to interrogatories, . . . together with the affidavits, if any, . . . show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). The burden of proof is on the party requesting summary judgment. E.g., Chapman v. Sparta, 167 Vt. 157, 159 (1997). When presented with cross-motions for summary judgment, we must consider each motion in turn and afford all reasonable doubts and inferences to the party opposing the motion under consideration. E.g., DeBartolo v. Underwriters at Lloyd's of London, 2007 VT 31, ¶ 8, 181 Vt. 609. To the extent that a moving party relies upon facts that have been specifically disputed by affidavit or other evidence, we must decline to grant the pending motion, based upon the general premise that material facts are in dispute. See V.R.C.P. 56(c)(3). We review the pending motions in this light.

The Town, by way of its converted motion, seeks a summary judgment on all three legal Questions preserved for our review in this appeal. Applicant requests that the Court summarily enter judgment on his behalf on two of the three Questions posed in his Statement of Questions. All legal issues that Applicant has preserved for our review in this appeal are therefore ripe for consideration in our review of the pending motions.

In Question 1, Applicant poses the general question of whether his zoning permit application should be granted. Applicant asks in Question 2 whether his 1.2± acres should be considered a separate lot, such that he may develop it separately from the already developed portion of his property. In Question 3, Applicant asks whether the doctrine of equitable estoppel precludes the Town from denying that his 1.2± acres constitute a separate lot, given that the Town, through the earlier actions of its former Zoning Administrator and Town Attorney, allowed a separate but similar portion of an adjacent property to be treated as a separate lot. Applicant also provided other examples of the Town's authorization of the creation of undersized lots, due to a town road dividing a larger parcel. We address each Question in turn.

### Question 1: Whether Applicant's Permit Application Should Be Granted

Applicant's first Question causes us to ask whether the Regulations allow for the type of development Applicant proposes for his parcel of land. In this regard, we note that any applicant must satisfy an initial burden of presenting evidence that their development proposal conforms to all applicable provisions of the zoning regulations. E.g., In re Appeal of McLaughlin, Docket No. 42-2-05 Vtec, slip op. at 8 (Vt. Envtl. Ct., March 13, 2006) (Durkin, J.).

Section 5 of Article IV of the Regulations lists one- and two-family dwellings as permitted uses in Zone E and thus allows for development such as Applicant proposes here. While we have not been provided with a specific site plan, it appears from the parties' filings that no party disputes Applicant's assertion that his proposed development also conforms to the 75-foot setback minimums for the front, rear, and side yards. The only disputes presented appear to be that Applicant's proposed development cannot conform to the minimum requirements for lot size (7 acres) and road frontage (350 feet).

Applicant's Questions 2 and 3 call upon us to address the question of whether Applicant's 1.2± acres qualify as a separate lot, and we address that issue in later sections of this Decision. Given that it is undisputed that Applicant's 1.2± acres have no more than 325 feet of road frontage, we must conclude that Applicant's proposal does not conform to the minimum

road frontage requirement of 350 feet. We therefore limit our analysis here to whether Applicant and his property are entitled to an exemption from the minimum road frontage requirement. Failing that, the facts presented inevitably lead us to conclude that Applicant's application must be denied as a matter of law.

Our Supreme Court has recently opined on the general question of how undersized lots may be lawfully recognized and the specific question of whether such lots must nonetheless conform to minimum road frontage requirements. See In re Jenness & Berrie, 2008 VT 117. In this case, the Supreme Court agreed with this Court's determination that a pre-existing small lot, qualified under the former 24 V.S.A. § 4406(1) (now codified at 24 V.S.A. § 4412(2)), is "exempt . . . from 'lot size, lot depth and lot width' [frontage] requirements." Id. at ¶ 23. The Supreme Court also agreed with this Court that if a lawful pre-existing small lot was nonetheless required to meet frontage and depth requirements, it "would render meaningless the forty-foot width and depth provisions in the small-lot exemption" contained in 24 V.S.A. § 4406(1) and the municipal regulations. Id. Thus, the "existing-small-lot statute and bylaws, which expressly set minimum dimensions for existing small lots, were plainly intended to preempt otherwise-applicable dimensional requirements." Id. at ¶ 24. The Supreme Court specifically rejected the suggestion that a lot that otherwise qualifies for exemption from lot and size requirements should still be required to obtain a variance from those requirements. Id.

Several of the legal issues presented in the application now before us appear identical to the issues present in Jenness & Berrie. We therefore conclude that, to the extent Applicant's 1.2± acres qualify under 24 V.S.A. § 4412(2) and section 2 of article III of the Regulations as a lawful, pre-existing small lot, it need not satisfy the road frontage minimum for the Agricultural and Forest Conservation Zoning District. As in the application before the courts in Jenness & Berrie, we recognize that Applicant's proposed development here must respect the separate setback regulations concerning front, rear, and side yards.

### Question 2: Pre-existing Small Lots

We next turn to the central question of whether Applicant's 1.2± acres qualify as a separate lot. To make this determination, we first review the definitions afforded in the Regulations, applicable statutes, and caselaw, and then apply such precedent to the undisputed facts now before us.

The Regulations define a "lot" as "[l]and occupied or to be occupied by a building and its accessory buildings, together with the required open spaces, <u>having not less than the minimum area, width, and depth required for a lot in the district in which the land is situated</u>." Regulations art. I, § 7 (emphasis added). Zone E, in which Applicant's parcel is located, requires a minimum lot area of seven acres. Regulations art. IV, § 5. However, the Regulations further provide an exception for lots not meeting the minimum lot size, width, and depth requirements. In conformance with 24 V.S.A. § 4412(2),[4] the Regulations state the following:

> Any lot in individual and separate and non-affiliated ownership from surrounding properties in existence on the effective date of these Regulations may be developed for the purposes permitted in the district in which it is located, even though not conforming to minimum lot size requirements, if such lot is not less than one-eighth acre in area with a minimum width or depth dimension of forty feet.

Regulations art. III, § 2. The Supreme Court has held that under this type of exception, "existing small lots are effectively grandfathered as nonconforming uses as to area." <u>In re Weeks</u>, 167 Vt. 551, 555 (1998). Although they do not meet the minimum lot size requirement, exempted parcels still "retain their development rights." <u>Id</u>. As recently as this month, the Supreme Court reasserted the plain meaning interpretation of 24 V.S.A. § 4412(2) that a lawful "[pre-]existing small lot is '[a]ny lot in individual and separate and non-affiliated ownership from surrounding properties in existence on the effective date of any zoning regulation.'" <u>Jenness & Berrie</u>, 2008 VT 117, ¶ 10 (second alteration in original) (quoting 24 V.S.A. § 4406).

The Supreme Court has held that this exception does not apply when two contiguous parcels of land are owned by the same person on the effective date of zoning: "Adjoining property [lots, one or more of which do not comply with the zoning size requirements,] held in common ownership on the effective date of zoning [are] deemed merged by operation of law under the statute because <u>one goal of zoning is to phase out nonconforming uses, including undersize lots</u>." <u>In re Richards</u>, 2005 VT 23, ¶ 6, 178 Vt. 478; accord <u>Drumheller v. Shelburne Zoning Bd. of Adjustment</u>, 155 Vt. 524, 529 (1990). The crucial date is the time in which the zoning regulations came into effect:

> Unless the zoning ordinance provides otherwise, small lots held in unaffiliated and separate ownership <u>on the effective date of zoning regulation</u> do not lose their

---

[4] The Regulations cite to 24 V.S.A. § 4406(1). The Permit Reform Act of 2004 generally reformatted Chapter 117 of Title 24. The current statutory provisions relating to pre-existing small lots are contained in 24 V.S.A. § 4412(2).

protected status if, subsequent to the effective date of zoning, they come into common ownership. In re Weeks, 167 Vt. 551, 555 (1998). Conversely, once two parcels merge by operation of law, they remain so notwithstanding a subsequent owner's efforts or desire to separate them for development. Drumheller, 155 Vt. at 529–30. Thus, in this case, either the adjoining parcels merged because they were held in common ownership [at the effective date of zoning regulation], or they did not merge at that time because the location and function of the right-of-way rendered the two parcels functionally separate and distinct.

Richards, 2005 VT 23, ¶ 8 (emphasis added) (parallel citations omitted).

The East Montpelier Regulations came into effect in 1982. The most important factual inquiry for our analysis here is whether Applicant's property at that time was (1) held as two separate lots and (2) in common ownership. Id. Applicant's property appears to have been held only as part of a larger single parcel when zoning came into effect. In fact, the evidence now before us, while not complete, appears to be that Applicant's predecessor in title specifically represented in 1989 that the entire 12.2± acres would be held as one parcel when the larger parcel was subdivided. While it is true that when the Walkers conveyed the property, they did so in a deed that described it in two parcels, we have no evidence before us now of whether this description was intended to evidence separate parcels or, if so, the legal foundations for that subdivision. What we do already know is that when this subdivision was permitted in 1989, zoning had already been in effect for some time. Thus, it appears on the evidence before us that one of the basic preconditions of § 4412(2) is not present: that the lots must have been held separately prior to the enactment of zoning.

In short, we fear that this application does not so much present the question of whether a pre-existing lot, later made non-conforming by the enactment of zoning, should be allowed to be developed separately; rather, Applicant's application appears to present the question of whether he should be allowed to create and develop an undersized, non-conforming lot, established after zoning came into effect, particularly since his neighbor was allowed to do so. If this proves to be a correct characterization of the facts surrounding Applicant's property, we are hesitant to allow the development of his 1.2± acres separately, since "one goal of zoning is to phase out nonconforming uses, including undersize lots." Richards, 2005 VT 23, ¶ 6. Thus, after two parcels merge by operation of law, the property may not be developed in a way that would recreate the nonconformity. Id.; Drumheller, 155 Vt. at 529–30.

We recognize that our legal analysis here and the facts upon which it is based have not been fully developed in this appeal. We therefore decline to enter summary judgment at this time to either party, so that they may be allowed to more fully develop the applicable facts and present them to the Court. In the event no contrary facts are presented to the Court, we are uncertain how Applicant's 1.2± acres can satisfy the statutory definition of a lawful, pre-existing small lot.

In so ruling, we note that the law of how a state or town highway may naturally create a subdivision of land remains unchanged by the Supreme Court's determination in Jenness & Berrie. The Supreme Court has previously held that "a right-of-way which, because of location and function, effectively separates the parcels that it physically connects, so they cannot be used in the ordinary manner as a single 'lot,' may render those parcels separate for purposes of 24 V.S.A. § 4406(1) and conforming zoning bylaws." Wilcox v. Vill. of Manchester Zoning Bd. of Adjustment, 159 Vt. 193, 197 (1992) (emphasis added). However, the mere existence of a right-of-way does not automatically render the parcels as separate lots. Id. at 197–98. Although a right-of-way is "traditionally construed as an easement," a right-of-way "could be a well-travelled road, or simply lines on a plan that pose few practical barriers to the enjoyment of the property as a single parcel." Id. at 198. Again, in determining whether the existence of a right-of-way precludes the merger of parcels, we must look at the condition of the property in 1982 because "the focus must be on the circumstances existing at the time zoning regulation became effective." Richards, 2005 VT 23, ¶ 8. The "present and potential use" of the right-of-way is not determinative. Id. at ¶ 11.

We therefore look forward to receiving evidence as to the circumstances existing on the property in 1982 and how Applicant's 12.2± acres were represented (meaning as one lot or two lots) at the time that the 12.2± acres were subdivided in 1989 under the then-existing Regulations.[5] Because such facts are material to the legal issue raised by Applicant's Question 2, but remain unclear on the record now before us, we cannot grant summary judgment to either party at this time. See V.R.C.P. 56(c)(3).

---

[5] We invite the parties to present the Court with any evidence that may be relevant to the factual inquiry of how Applicant's property was held at the time zoning came into effect. We do not intend the language of this Decision to suggest that the only relevant facts relate to the 1989 Walker subdivision.

## Question 3: Equitable Estoppel

Applicant's Question 3 asks the Court whether the doctrine of equitable estoppel precludes the Town from denying that the 1.2± acres constitute a separate lot. Equitable estoppel requires the satisfaction of four elements: "(1) the party to be estopped must know the facts; (2) the party being estopped must intend that his conduct shall be acted upon or the acts must be such that the party asserting estoppel has a right to believe it is so intended; (3) the party asserting estoppel must be ignorant of the true facts; and (4) the party asserting estoppel must rely to his or her detriment on the estopped party's former conduct." In re Griffin, 2006 VT 75, ¶ 18, 180 Vt. 589 (mem.). Estoppel is applied against governmental entities (such as a Vermont municipality) "'only in rare instances' when the elements of estoppel are met and the injustice that would result from denying estoppel outweighs any negative impact on public policy that would result from applying the doctrine." Lakeside Equip. Corp. v. Town of Chester, 2004 VT 84, ¶ 8, 177 Vt. 619 (mem.) (quoting Larkin v. City of Burlington, 172 Vt. 566, 569 (2001) (mem.)); accord Griffin, 2006 VT 75, ¶18. For the reasons more fully stated below, we conclude that the doctrine of equitable estoppel, particularly within the limits that may be applied against a municipality, is not applicable to the factual and procedural record before us.

We have two major concerns with applying the doctrine of equitable estoppel in this case. First, Applicant appears to demand that he be afforded the exact same legal result a neighbor previously received on his specific request for a zoning determination, without regard to the notion that the interpretation of zoning laws can evolve. Applicant admits that he did not request a similar zoning determination at the time his neighbor did, but asserts that he was advised by an interim zoning administrator that he did not need to make such a request. Second, Applicant would have us possibly ignore applicable legal precedent, including that from our Supreme Court, because a prior zoning administrator either made an incorrect interpretation of that precedent or did not have the foresight to see how the Court's interpretation would evolve in connection with the pre-existing small lot exemption.

The Supreme Court discourse on the pre-existing small lot exemption extends over at least eighteen years. See Drumheller v. Shelburne Zoning Bd. of Adjustment, 155 Vt. 524 (1990). But the Supreme Court's recent refinements to this exception, including opinions that emphasize the restrictions on the ability of municipalities to recognize such non-conforming lots, have only been clarified in cases over the last several years. See Jenness & Berrie, 2008 VT 117;

In re Nowicki Bldg. Permit, 2007 VT 76; In re Bailey, 2005 VT 38A, 178 Vt. 614; Richards, 2005 VT 23; In re Richards, 174 Vt. 416 (2002). The difficulty in interpreting this area of the law is evidenced by this Court's determination in Jenness & Berrie, which the Supreme Court reversed as to the applicability of the pre-existing small lot provision. Jenness & Berrie, 2008 VT 117, ¶¶ 9–18.

The reality, perhaps unfortunate, is that zoning administrators are also human and sometimes make mistakes. This reality is evidenced by the statutory explanation that "nonconforming lots or parcels" include "a lot or parcel improperly authorized as a result of error by the administrative officer." 24 V.S.A. § 4303(13). While zoning must respect the right of lawful nonconformities to continue, its ultimate goal is to eliminate them. Richards, 2005 VT 23, ¶ 6. We are not aware of any precedent for the general proposition that an owner should be allowed to create a new lot that does not conform to the existing zoning regulations, on the basis of the equitable estoppel claim that Applicant now advances.

We are directed to afford precedential weight to prior decisions of the former Vermont Environmental Board. 10 V.S.A. § 8504(m). But we know of no requirement that we afford such weight to the decisions of local zoning administrators or the various municipal panels. In fact, in terms of the specific decisions of appropriate municipal panels appealed to this Court on a de novo basis, we are specifically directed to consider the pending application "'as though no action whatever had been [previously] held . . . .'" Chioffi v. Winooski Zoning Bd., 151 Vt. 9, 11 (1989) (quoting In re Poole, 136 Vt. 242, 245 (1978)). The Supreme Court has specifically concluded that we are not required to give deference to a zoning board's decision. Id.

Applicant appears to advance an argument, put forth within his equitable estoppel claim, that we should recognize some type of vested right to develop property in the same manner permitted for his neighbor, given that Applicant's property is similarly situated. But we know of no such vesting rule. In fact, no such rights vest in a property owner, until a complete zoning or land use application is filed. In re Taft Corners Assocs., Inc., 171 Vt. 135, 143–44 (2000). We decline to recognize the broad interpretation of vesting that Applicant advances here.

Applicant raises an additional claim within the context of his estoppel argument. He claims that he relied on the ZBA to his detriment because it did not timely provide him with notice, via certified letter, of its decision in accordance with 24 V.S.A. § 4464(b)(3). Although the ZBA's letter was dated September 20, 2007, it is undisputed that the Zoning Administrator

did not forward the ZBA letter to Applicant until October 4, 2007, which was 58 days beyond the August 7, 2007, evidentiary hearing. Additionally, Applicant asserts that the written decision did not include a statement of the ZBA's conclusions and a statement of the factual bases upon which it made those conclusions in accordance with 24 V.S.A. § 4464(b)(1).

A municipal panel must issue its decision on a development review application within 45 days after the adjournment of their hearing on the application. 24 V.S.A. § 4464(b)(1). If the panel does not issue a decision within this timeframe, the failure to issue a decision is "deemed approval" on the 46th day. Id. Violations of this statutory directive have often led to appeals before this Court. Although the statute also directs the panel to send the decision to the applicant by certified mail within the same 45-day period, § 4464(b)(3), the Vermont Supreme Court has explicitly held that violations of this technical requirement will not lead to a "deemed approval" remedy "so long as the failure to send a copy is inadvertent and not the result of a policy or purpose to withhold notice of the decision." Leo's Motors, Inc. v. Town of Manchester, 158 Vt. 561, 565 (1992). "Deemed approval is intended to remedy indecision and protracted deliberation on the part of zoning boards and to eliminate deliberate or negligent inaction by public officials." In re Miller Conditional Use Application, Docket No. 59-3-07 Vtec, slip op. at 8 (Vt. Envtl. Ct. Nov. 5, 2007) (Durkin, J.) (internal quotations omitted) (citing In re McEwing Svcs., LLC., 2004 VT 53, ¶ 21, 177 Vt. 38). The Vermont Supreme Court takes a conservative approach to its interpretation of this remedy. Id. at 8–9. Deemed approval is "inappropriate where there has been a timely decision, but that decision fails to meet some other requirement of the deemed approval statute." In re Hale Mountain Fish & Game Club, Docket Nos. 259-12-05 Vtec & 149-8-04 Vtec, slip op. at 6 (Vt. Envtl. Ct. Mar. 25, 2008) (Durkin, J.) (citing McEwing, 2004 VT 53, ¶ 21).

The ZBA voted to deny Applicant's appeal on August 28, 2007 and issued a written decision on September 20, 2007. Thus, the ZBA's vote and written decision both occurred within the 45-day deadline. Since there is no evidence currently before us that the Town's delay in mailing notice of the ZBA denial was purposeful, we conclude that the ZBA's action and notice of it to Applicant was timely and that any other technical defects in that notice do not rise to the level of triggering the "deemed approval" remedy. See Griffin, 2006 VT 75, ¶¶ 14–15; Town of Hinesburg v. Dunkling, 167 Vt. 514, 521–22 (1998); Leo's Motors, 158 Vt. at 565.

In summary, even assuming all facts that Applicant asserts as true and viewing all material facts in a light most favorable to him, we conclude that the Town is not equitably estopped from arguing that the pre-existing small lot exception of 24 V.S.A. § 4412(2) and section 2 of article III of the Regulations does not apply to this application.  A summary denial of Applicant's Question 3 is thus appropriate at this time, and we therefore **GRANT** the Town's motion in that regard and hereby **DISMISS** Question 3.

### Motion for Disqualification of Mr. Bjornlund

Applicant has also moved to disqualify the Town's attorney, Mr. Bjornlund, under Rule 3.7 of the Vermont Rules of Professional Conduct ("V.R.P.C.").  V.R.P.C. 3.7 governs the propriety of an attorney combining the roles of advocate and witness; it provides in relevant part that:

(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:
  (1) the testimony relates to an uncontested issue;
  (2) the testimony relates to the nature and value of legal services rendered in the case; or
  (3) disqualification of the lawyer would work substantial hardship on the client.

Applicant claims that some of Mr. Bjornlund's statements conflict with the testimony of Mr. Haverstick and Deborah Fillion, the Town's interim zoning administrator.  Such conflicting statements, Applicant argues, demand that Mr. Bjornlund serve as a witness in this proceeding.  Because he will be called as a witness, Applicant concludes that the Court should disqualify Mr. Bjornlund as the Town's attorney and direct that he withdraw his appearance from this appeal.  However, V.R.P.C. 3.7 only applies to the combination of the roles of advocate and witness at trial.  Because Applicant has not demonstrated that Mr. Bjornlund is likely to be a <u>necessary</u> witness, Mr. Bjornlund is not precluded from representing the Town at trial or at any other time throughout this appeal.  See V.R.P.C. 3.7(a).

We must approach attorney disqualification carefully.  Our Supreme Court has noted that "disqualification of counsel . . . 'is a drastic measure which courts should hesitate to impose except when absolutely necessary.'"  <u>Cody v. Cody</u>, 2005 VT 116, ¶ 23, 179 Vt. 90 (citing <u>Chem. Waste Mgmt., Inc. v. Sims</u>, 875 F. Supp. 501, 503 (N.D. Ill. 1995)).  Motions to disqualify counsel "should be resolved with extreme caution because they may be used abusively

as a litigation tactic." Nelson v. Green Builders, Inc., 823 F. Supp. 1439, 1444 (E.D. Wis. 1993). Moreover, in reviewing a request for an attorney's disqualification, we must be "solicitous of a client's right freely to choose his counsel." Stowell v. Bennett, 169 Vt. 630, 630 (1999) (internal quotations and citation omitted).

Under Rule 3.7, Applicant must demonstrate that Mr. Bjornlund is "likely to be a necessary witness." In attempting to understand the burden of proof Applicant now faces, we are reminded that the "necessity standard requires more than mere speculation that counsel will be required to testify." Bradford v. State, 734 So. 2d 364, 369 (Ala. Crim. App. 1999). A lawyer only meets the necessary witness requirement "where the proposed testimony is relevant, material, not merely cumulative, and unobtainable elsewhere." Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell, 239 F. Supp. 2d 1170, 1173 (D. Colo. 2003) (citing World Youth Day, Inc. v. Famous Artists Merchandising Exchange, Inc., 866 F. Supp. 1297, 1302 (D. Colo. 1994)). We conclude, for the reasons expressed below, that Applicant has failed to establish that Mr. Bjornlund is likely to be a necessary witness at the time of trial.

Applicant has not demonstrated that Mr. Bjornlund's testimony is necessary, relevant and material to this proceeding. First, Mr. Bjornlund's testimony is neither relevant nor material to Applicant's Questions 1 or 2, which are reviewed in detail above. In order to determine whether the Mastelli parcel is a lawfully recognized separate lot, we must examine the circumstances of the property in 1982 (when the Town adopted its Regulations) and the circumstances surrounding the application and permit that authorized the creation of his 12.2-acre parcel in 1989, at a time when zoning was already in effect. See, e.g., Richards, 2005 VT 23, ¶ 8. Mr. Bjornlund's testimony has no place in this analysis. Likewise, his testimony is not necessary, relevant or material to Applicant's Question 3 because we have already determined that Applicant's equitable estoppel argument fails as a matter of law. In sum, the analysis of Applicant's Questions does not necessitate that Mr. Bjornlund serve as a witness at trial.

In response to Applicant's motion for disqualification, the Town claims that the Court's lack of jurisdiction eliminates the need for Mr. Bjornlund's testimony. Specifically, the Town argues that the Court does not have jurisdiction over Applicant's appeal because he failed to appeal the building permit issued to Mr. Taylor. We disagree. As Applicant correctly notes in his response, the Court has jurisdiction to address his appeal under 24 V.S.A. § 4471. Applicant's apparent "failure" to appeal the permit issued to Mr. Taylor to develop his adjacent

undersized lot is not relevant to these proceedings and does not cause the Court's jurisdiction over this appeal to evaporate. Contrary to the Town's assertion, we conclude that the Court's jurisdiction over this appeal remains unaffected by the prior permit proceedings.

Section 4471 provides the Environmental Court with jurisdiction over appeals from determinations of appropriate municipal panels: "An interested person who has participated in a municipal regulatory proceeding authorized under this title may appeal a decision rendered in that proceeding . . . to the environmental court." 24 V.S.A. § 4471(a). For purposes of 24 V.S.A. § 4471, an interested person includes a person owning title to property affected by a bylaw; an applicant certainly fulfills this criterion. See § 4465(a); Town of Sandgate v. Colehamer, 156 Vt. 77, 82 (1990). In fact, an appeal to the environmental court is the only avenue of recourse from a zoning board's decision. See § 4472(a) (stating that the exclusive remedy of an interested person concerning any decision of an appropriate municipal panel is an appeal to the environmental court). In the absence of a timely appeal, interested persons are bound by the decision of the municipal panel, and they "shall not thereafter contest, either directly or indirectly, such decision . . . in any proceeding." See § 4472(d); In re Ashline, 2003 VT 30, ¶ 8, 175 Vt. 203.

Here, the Court has jurisdiction over this appeal under 24 V.S.A. § 4471 because Applicant properly and timely appealed the ZBA's decision on his application. See V.R.E.C.P. 5(b)(1) (directing that appeals be filed within 30 days). Applicant is an interested person because he owns the property which is the subject of the pending application and appeal. He also timely appealed the decision to this Court on October 11, 2007, 21 days after the ZBA rendered its written decision on September 20, 2007. Thus, Applicant's failure to appeal the decision on Mr. Taylor's building permit does not affect the Court's jurisdiction over this appeal. The Town is incorrect in its argument that the Court does not have jurisdiction over Mr. Mastelli's pending appeal.

V.R.P.C. 3.7 does not require Mr. Bjornlund's disqualification as the Town's attorney. He is not a necessary witness under Rule 3.7 because his testimony is not necessary for the proper adjudication of Applicant's remaining Questions.[6] We therefore **DENY** Applicant's

---

[6] Our analysis of Applicant's request that Attorney Bjornlund be disqualified is premised upon his assertion that Mr. Bjornlund must be called as a necessary witness. The Town asserts that he is not and has given no notice that the Town intends to call Mr. Bjornlund as a witness at trial. If the Town presents Mr. Bjornlund as a witness at trial, the Court will allow Applicant to renew his disqualification motion immediately at that time.

motion to disqualify Mr. Bjornlund as the Town's attorney.

### Conclusion

Accordingly, it is **ORDERED** and **ADJUDGED** that the summary judgment motion of each party is **DENIED** as to Applicant's Questions 1 and 2; the Court concludes that a merits hearing is necessary to render a determination on those Questions, within the confines of the legal analysis of this Decision. The Town's summary judgment motion is **GRANTED** only with respect to Question 3, and Question 3 is therefore **DISMISSED**. Finally, Applicant's motion for disqualification of Mr. Bjornlund as the Town's attorney is **DENIED**.

Dated at Newfane, Vermont this 19th day of September, 2008.

_____
Thomas S. Durkin, Environmental Judge